**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| OXY USA, INC., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:24-cv-1309 |
| BERKLEY NATIONAL INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs OXY USA, Inc., Occidental Permian Ltd., Anadarko Petroleum Corporation, and Anadarko E&P Onshore LLC (collectively, "Oxy") respectfully request the Court enter summary judgment on all their claims against Defendant Berkley National Insurance Company ("Berkley").

## INTRODUCTION

The undisputed facts establish that Berkley wrongfully rejected a pending *Stowers* demand in a case in which Oxy was a defendant, thereby subjecting Oxy to excess liability. Thus, Oxy is entitled to summary judgment on its contractual, statutory, and common law claims against Berkley. Berkley's sole excuse for its rejection of the pending *Stowers* demand is that it decided to accept another, simultaneously-pending demand in a different case not involving Oxy. But where an insurer's *Stowers* duty has been triggered—as Berkley's duty to Oxy was here—the insurer may not simply ignore that duty and favor another insured. That is precisely what Berkley did here—it rejected the already-pending, valid *Stowers* demand in the lawsuit in which Oxy was a defendant, and accepted a policy-limits demand in another lawsuit in which Oxy was not, depriving Oxy of its bargained-for insurance coverage. To avoid the risk of future, even greater

excess liability, Oxy was forced to pay ███████ of its own money to settle with the plaintiff, when the entirety of that amount should have been paid by Berkley. Binding Texas authority makes clear that Berkley's conduct violates Texas law and the Texas Insurance Code, and is also a breach of contract.

As the evidence establishes—and as Berkley has conceded—the demand Berkley rejected was within the scope of coverage, was within policy limits, and was one that a reasonable insurer would have accepted under the circumstances. Accordingly, under *Stowers*, Berkley was required either to accept the demand or face extra-contractual liability for the excess liability Oxy incurred in settling the matter. Berkley chose the latter course of action, contending that it was entitled to arbitrarily choose one insured and one lawsuit over another rather than treating both insureds equally. But there is no suggestion in *Stowers* or its progeny that the Texas Supreme Court would allow such dodgy conduct; and in fact, the guiding principles of those cases make clear that Berkley was *not* permitted to reject the demand. Indeed, Texas law provides clear guidance on what Berkley *should* have done in this situation to avoid liability—interplead the policy limits and let the Court apportion the funds in a fair and equitable manner. Oxy implored Berkley to do just this, but Berkley ignored that guidance to its own detriment. Oxy also sought injunctive relief, but this Court denied that relief on the ground that Oxy had an adequate remedy at law because it could later pursue damages from Berkley.

The day of reckoning has arrived. For the reasons below, this Court should grant Oxy summary judgment on its claims.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

**A.     Relevant Parties and Agreements**

1.       Plaintiff Anadarko Petroleum Corporation (now an Oxy affiliate) retained Lynx to perform services at a well site owned by Oxy in Reeves County, Texas. Decl. of Kallie A.

Gallagher ("Gallagher Decl.") ¶¶ 2–3.  Oxy and Lynx entered into a Master Service Contract ("MSC").  Ex. 1; ECF 12, Resp. to Appl. for TRO and Prelim. Inj. ("Berkley TRO Resp.") ¶ 10.

2.      Pursuant to the MSC, Oxy and Lynx agreed to mutually indemnify each other for any claims brought by their own respective employees against the other party, regardless of fault.  Ex. 1 § 13.  As required by the MSC, Lynx also procured commercial general liability (the "CGL Policy") and excess liability insurance (the "Excess Policy") (collectively, the "Policies") with certain minimum limits to secure its indemnity agreement, and named Oxy as an additional insured under the Policies.  *Id.* § 13(b)(iv); *id.* at Ex. B; Berkley TRO Resp. ¶¶ 5, 10.

3.      The Berkley Policies cover June 7, 2021 through June 7, 2022.  Ex. 2; Ex. 3; Berkley TRO Resp. ¶ 5.  The total applicable insurance carried by Lynx was $21 million for a single occurrence, and $22 million for two occurrences (a $2 million aggregate limit for the CGL Policy, with a $1 million per-occurrence limit, and a $20 million aggregate limit for the Excess Policy).  *Id.*  The Policies are governed by Texas law.  Berkley TRO Resp. (applying Texas law).

### B.      The Milburn Lawsuit

4.      Lynx employed Vaughn Milburn to perform certain flowback procedures at the well site.  Gallagher Decl. ¶ 9; Berkley TRO Resp. ¶ 9.  Milburn alleged that he was performing a flowback procedure when "suddenly and without warning to [Milburn], the open top tank exploded causing [Milburn] serious injury."  Ex. 4 ¶ 4.9.  Milburn and his wife filed a personal injury lawsuit against Oxy and other defendants in Harris County on February 1, 2022.  *Id.*  Milburn claimed damages due to severe injuries to his legs and body as well as burns from the flashfire.  *Id.* ¶¶ 8.1– 9.2.  The alleged damages included pain and suffering, physical impairment, mental anguish, lost wages, medical expenses, and a loss of consortium claim by Milburn's wife.  *Id.* ¶¶ 8.2–8.3.

5.      Berkley has acknowledged that the Milburn Lawsuit falls within the scope of the additional insured coverage Berkley provided to Oxy and that Berkley is thus required to defend

and indemnify Oxy under the Policies.  Ex. 6.  On March 3, 2022, Oxy demanded defense and indemnification from Lynx and Berkley for the Milburn Lawsuit, Ex. 5, and Berkley accepted that demand on April 12, 2022.  Ex. 6; Berkley TRO Resp. ¶ 10.  Berkley expressly acknowledged its duty to cover Oxy for the Milburn Lawsuit as an additional insured.  *Id.*

6.      On February 5, 2024, Plaintiffs in the Milburn Lawsuit issued an initial settlement demand for ███████ .  Ex. 7; Berkley TRO Resp. ¶ 14.

**C.      The Perez Lawsuit**

7.      On March 5, 2024, Berkley disclosed to Oxy, for the first time, that in addition to defending Oxy in the Milburn Lawsuit, Berkley was "providing a defense to four insured defendants in a separate lawsuit that falls within the same policy period as the Milburn Lawsuit." Ex. 8; Berkley TRO Resp. ¶ 11.  Berkley did not provide any identifying details regarding the "separate lawsuit." Ex. 8.  Instead, Berkley vaguely stated that it had "determined that the potential exposure to all insured defendants in the Lawsuits will likely exceed the Policies' aggregate limits of liability," but noted that it was Berkley's "sincere hope" that all claims "can, and will, be resolved globally within the available limits of the Policies."  *Id.*; Berkley TRO Resp. ¶ 11.

8.      Oxy subsequently learned that the "separate lawsuit" was the Perez Lawsuit, and that the claims in that suit related to the death of an individual at a ConocoPhillips well site in New Mexico.  Gallagher Decl. ¶ 18; *see* Berkley TRO Resp. ¶ 7.

9.      On March 13, 2024, Oxy received a follow-up letter from Berkley stating that Berkley intended to accept a demand in the Perez Lawsuit in the amount of $21 million, which would exhaust the Excess Policy limits and leave only $1 million under the CGL Policy available for the Milburn Lawsuit.  Ex. 9; Berkley TRO Resp. ¶ 13.  At that time, Berkley had not accepted the Perez Demand, nor had it communicated any intention to accept the Perez Demand to the Perez Plaintiffs.  Ex. 20, Nov. 8 Motion Hearing Transcript ("MTD & MSJ Tr.") at 47:5-17.

10.     Oxy responded to Berkley's letter the same day, March 13, and stated that Berkley was required to reserve a sufficient portion of the applicable policy limits to resolve the Milburn Lawsuit, rather than exhaust the full policy limits on the Perez Lawsuit, which, based on Oxy's review and analysis of the facts and circumstances alleged, was of lower risk of excess judgment to the insured.  Ex. 10.  Oxy expressly requested that Berkley not engage in the course of conduct it proposed—*i.e.*, exhausting the policy limits by settling the Perez Lawsuit—until the policy limits applicable to the competing claims could be apportioned in a fair and equitable manner, either by Berkley or by a court.  *Id.*

**D.     Berkley Receives a *Stowers* Demand in the Milburn Lawsuit**

11.     On March 19, 2024, Oxy received a time-limited settlement demand from the Milburn plaintiffs in the amount of ███████ (the "Milburn Demand"), which was a significant reduction from the prior ███████ demand.  Ex. 11.  The Milburns' counsel explained that if the demand was rejected, future negotiations would begin in the range of the previously issued ███ ███ demand, which counsel stated was closer to the true value of the case.  *Id.*

12.     The Milburn Demand was within the Policies' defined scope of coverage and was within the relevant and available policy limits.  Exs. 1–3; Berkley TRO Resp. ¶ 15.  The Milburn Demand was also reasonable in light of the relevant circumstances.  As Berkley's retained counsel stated, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████  Ex. 13 at 38.  Indeed, Berkley has never—in its pre-suit correspondence with Oxy nor during the year-long pendency of this litigation—asserted that the Milburn Demand was itself unreasonable.  *See* Berkley TRO Resp.; Exs. 8, 9, 14; Ex. 19, May 2, 2024 Hearing Transcript ("TRO Tr.") at 22:19-21; 26:21-27:2; 27:15-28:1; 28:19-21; MTD & MSJ Tr. at 8:18-19.

5

13.     On March 25, 2024, Oxy sent Berkley a letter confirming a discussion between their respective counsel concerning the Milburn Demand. Ex. 12. Oxy reiterated its view that under Texas law, when an insurer receives two competing demands within policy limits that are pending at the same time, an insurer is not permitted to simply chose one insured over another, but instead is required to act in good faith, recognizing its duty to both insureds, to resolve the competing demands. *Id.* Oxy again requested that the policy be equitably apportioned between the two matters, *id.*, and also urged Berkley to interplead the funds in the event that was not possible, *see* TRO Tr. at 14:24-25.

### E.     Berkley Rejects the Milburn Demand, Accepts the Perez Demand, and Exhausts the Policy Limits

14.     Despite Oxy having given Berkley two viable options—a negotiated global resolution through apportioning available coverage or interpleader—to address the competing interests of its insureds and its duty under Texas law, Berkley instead chose a third option—the worst possible one, and the only one that exposed it to excess liability. On March 28, 2024, Oxy received a letter from Berkley informing Oxy that Berkley was not going to accept or fund—*i.e.*, was rejecting—the Milburn Demand; and that Berkley instead had accepted the $21 million Perez Demand, thereby exhausting the limit of the Excess Policy. Ex. 14; Berkley TRO Resp. ¶ 15; MTD & MSJ Tr. at 42:21-43:8. Berkley opined that "it became clear that it would not be possible to settle both lawsuits within the available policy limits because counsel in the Perez Lawsuit declined to extend their demand deadline or reconsider the amount of their settlement demand." Ex. 14; Berkley TRO Resp. ¶ 15. Berkley made no attempt to allocate the policy between the two competing demands, and instead simply accepted one and rejected the other.

15.     Having rejected the          Milburn Demand by refusing to accept and pay it in full, Berkley only provided Oxy with the remaining policy limit of $1 million for settlement of

6

the Milburn Lawsuit, exposing Oxy to excess liability.  Ex. 15; Berkley TRO Resp. ¶ 15.

16.    The Perez Demand was received on March 8 and was not accepted until March 28. Ex. 14.  The Milburn Demand was received on March 19.  Ex. 11.  Thus, it is indisputable that the Milburn Demand and the Perez Demand were pending simultaneously *for nearly ten days*.  *See* TRO Tr. at 20:13-20, 24:9-22 (Berkley admitting that the demands were pending simultaneously).

17.    When the Milburn Demand came in on March 19, Berkley was still engaged in its internal discussions and process regarding the Perez Demand.  MTD & MSJ Tr. at 46:4-5.  At that time, in Berkley's own words, it had not "conveyed to the Perez [plaintiffs] that it was going to accept [the Perez Demand]." *Id.* at 47:5-8.  Simply put, the Perez Demand had not been accepted when the Milburn Demand was made.  Berkley itself admitted in this Court that a settlement is accepted when that acceptance is communicated to the counter-signing party.  *Id.* at 49:8-16 ("[A] *Stowers* demand is accepted … when we say [to plaintiffs] 'We accept.'").  Berkley did not accept the Perez Demand until March 28, nine days after its *Stowers* duty to Oxy was triggered by the March 19 Milburn Demand.  *Id.*; Ex. 14; Ex. 11.

**F.    Oxy Accepts the Milburn Demand and Pays the Settlement**

18.    After unsuccessfully seeking injunctive relief in this action, on May 14, 2024, Oxy informed Berkley that, in its view, the Milburn Demand was reasonable and that it planned to accept it to "avoid the risk to Oxy and Berkley of a substantially higher judgment or settlement at a later date." Ex. 15.  In response, Berkley stated that its "$1M primary limit remain[ed] available for Oxy to accept the ███ settlement demand." *Id.*  Oxy accepted the Milburn Demand on May 15, 2024.  Ex. 16.

19.    The settlement agreement in the Milburn Lawsuit was executed on June 24, 2024, and Oxy tendered payment to the plaintiffs around July 15, 2024. Exs. 17–18.  Berkley later paid the Milburn plaintiffs the remaining $1 million on the CGL policy.  Gallagher Decl. ¶ 26.

## PROCEDURAL HISTORY

Oxy filed suit against Berkley on April 10, 2024 in the District Court of Harris County, Texas, alleging claims for breach of contract, breach of *Stowers*, violations of the Texas Insurance Code, declaratory judgment, and equitable relief.  ECF 3-1.  To prevent Berkley from exhausting the Excess Policy limits, Oxy moved for a TRO, temporary injunction, and permanent injunction. *See id.*  Berkley removed the action to this Court the same day.  ECF 1.

On May 10, 2024, without addressing the merits of Oxy's claims, the Court denied Oxy's motion for a TRO because there was "no evidence that Berkley will not be able to repay Oxy for any monetary losses at the conclusion of this litigation."  ECF 20 at 5.  Berkley moved to dismiss Oxy's Petition on June 21, 2024, ECF 27, and Oxy moved for summary judgment on July 24, ECF 33.  The Court granted Berkley's MTD because, at the time Oxy filed suit, it had not yet incurred liability in excess of the Policies' limits.  ECF 52 at 4.  But because it was clear from Oxy's MSJ that Oxy had later incurred damages in the form of excess liability in the Milburn Lawsuit, the Court granted Oxy leave to amend its pleadings, and denied Oxy's MSJ as moot.  *Id.*  Oxy filed its First Amended Complaint on April 21, 2025.  ECF 55.

The evidence establishes, and Berkley's counsel has conceded, that the Milburn Demand was for a covered claim, was within policy limits, and was reasonable such that Berkley would have accepted under the circumstances but for the existence of the Perez Demand.  *See infra* at I(A).  And, as this Court has recognized, the evidence further establishes that Oxy has suffered excess liability as a result of Berkley's rejection of the Milburn Demand.  Accordingly, there are no material facts in dispute and the only issue for the Court to decide is whether Berkley can evade *Stowers* liability as a matter of law.  Because this purely legal issue is ripe for the Court's decision,

Oxy now again moves for summary judgment on its claims.[1]

## ARGUMENT

Summary judgment is required when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it "might affect the outcome of the lawsuit under the governing substantive law," *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987), and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining questions of Texas law," a federal court "looks to the decisions of the Texas Supreme Court, which are binding." *Packard v. COA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010).

## I.   OXY IS ENTITLED TO SUMMARY JUDGMENT ON ITS *STOWERS* CLAIM (COUNT II).

### A.   The Undisputed Facts Establish that the Milburn Demand Was a Valid *Stowers* Demand that Berkley Had a Duty to Accept.

To establish a *Stowers* claim for negligent failure to settle, an insured must show that: (1) the claim is within coverage; (2) a demand was made within policy limits; and (3) the demand was such that an ordinary, prudent insurer would have accepted it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). The insured must also show that, as a result of the

---

[1] As discussed herein, the reasonableness of the Milburn Demand is established by the evidence and has never been disputed by Berkley. *Infra* at I(A). With respect to the Perez Demand, Oxy maintains that the demand was not reasonable. ECF 55 ¶¶ 4, 32. However, whether the Perez Demand was reasonable is not material to this Motion because Berkley is liable to Oxy for its rejection of the Milburn Demand regardless of the reasonableness of the Perez Demand. *See Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987) (a fact is not material if it does not "affect the outcome of the lawsuit"). Nevertheless, to the extent the Court denies summary judgment, Oxy reserves its rights to conduct discovery on the reasonableness of the Perez Demand and litigate the issue at trial.

insurer's failure to settle, the insured is "liable in excess of the policy limits—whether as a result of judgment or settlement." *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267–68 (Tex. 2021). Oxy has satisfied each of these elements, and Berkley has never meaningfully contested any of them.[2] Accordingly, Berkley is liable to Oxy for the ▮▮▮▮▮▮▮ in excess liability that Oxy incurred to fund the settlement in the Milburn Lawsuit.

*Within the Scope of Coverage*. The claim associated with the Milburn Lawsuit was within the scope of coverage as defined by the relevant agreements. *Supra* ¶ 12. Berkley accepted Oxy's demand for indemnification and defense in the Milburn Lawsuit; hired counsel to provide a defense; agreed to provide $1 million in coverage under the CGL Policy towards the Milburn Lawsuit settlement; and *paid* $1 million to partially cover the claim. Ex. 6; *supra* ¶¶ 5, 9, 15. There is thus no question that the Milburn Demand is a covered claim.

*Within Policy Limits*. It is also undisputed that the ▮▮▮▮▮▮ Milburn Demand was well within the $21 million limit of the Policies available on March 19—when the Milburn Demand was made and when Berkley's *Stowers* duty was triggered. *Supra* ¶¶ 12, 16; *see Am. Guarantee & Liab. Ins. Co. v. ACE Am. Ins. Co.*, 990 F.3d 842, 851–52 (5th Cir. 2021) (explaining that an insurer's *Stowers* duty is triggered when it is "presented" with a within-policy-limits demand).

*Reasonably Prudent Insurer Would Have Accepted*. The Milburn Demand was reasonable in light of all relevant circumstances, including the case assessment prepared by Berkley's retained counsel, as well as the assessment of Oxy's defense counsel; the claims asserted against all defendants; the facts developed in discovery; the severity of Milburn's injuries; the deposition testimony of relevant witnesses; the expert reports; the settlement potential of the case;

---

[2] Berkley has never—either in its pre-litigation communications with Oxy or during the course of this year-long litigation—contested that the Milburn Demand was a valid *Stowers* demand. *See* TRO Resp.; Exs. 8, 9, 14; Ex. 19 at 19:1-9; 19:24-20:3; 20:13-21; 22:3-16; 22:19-21; 26:21-27:2; 27:15-28:1; 28:19-21; MTD & MSJ Tr. at 8:18-19.

and the fact that the case was pending in Harris County, a venue with a history of high personal injury verdicts. Ex. 13. The Berkley-retained defense counsel expressly stated in a report submitted before Berkley rejected the Milburn Demand that the demand was ███████████████████ ████████████████ *Id.* at 38.

Berkley has conceded as much. In this litigation, Berkley has never offered evidence—or even asserted—that the Milburn Demand was unreasonable, despite multiple rounds of briefing and two hearings before this Court. *See* Berkley TRO Resp.; ECF 27, Berkley Mot. to Dismiss; ECF 36, Berkley Reply in Supp. of Mot. to Dismiss; ECF 37, Berkley Resp. to Oxy's Mot. for Summ. J.; TRO Tr. at 22:19-21 (acknowledging that Berkley had "*Stowers* letters" in both Milburn and Perez); *Id.* at 22:3-16 (agreeing that Berkley would have "offere[d] up the policy limits to *Milburn*" "if the *Perez* case was not on the table"); MTD & MSJ Tr. at 8:18-19 (referring to the Milburn Demand as a "*Stowers* demand").[3] When Oxy ultimately accepted the Milburn Demand and paid ████████ in excess liability, Berkley voiced no objection to the reasonableness of the demand and in fact made $1 million in coverage available. Ex. 15. In sum, whether the Milburn Demand was reasonable is not—and has never been—in question. And, having never taken that position or reserving its rights on the issue, Berkley has waived the ability to assert otherwise.

***Liability in Excess of Limits***. Oxy incurred liability in excess of the remaining policy limits. In order to avoid an outsized verdict after Berkley rejected the Milburn Demand, Oxy ultimately accepted that demand, paying ████████ out of pocket, and thus incurring liability in excess of the $1 million that Berkley paid. Ex. 16.

*       *       *

---

[3] Nor did Berkley ever assert that the Milburn Demand was unreasonable—or that it was entitled to reject the demand on that basis—in its pre-litigation correspondence with Oxy. *See* Exs. 8, 9, 14.

Because each element of *Stowers* has been satisfied, Berkley had a *Stowers* duty to accept the Milburn Demand and is liable to Oxy for the ▮▮▮▮▮ in excess liability that Oxy paid out of pocket.  Berkley insists it faces no liability here because Texas law permitted Berkley's breach.  Thus, the only question remaining for this Court is a pure question of law:  does Berkley's unilateral decision to accept the Perez Demand—after the Milburn Demand was received and Berkley's *Stowers* duty to Oxy was triggered—excuse Berkley from *Stowers* liability under Texas law?  It does not.  While Texas courts have not specifically addressed a situation in which two within-policy-limits demands were simultaneously pending, existing cases make clear that insurers are liable under *Stowers* when they negligently reject a reasonable demand within policy limits, causing an insured to incur excess liability—exactly what Berkley did here.

### B.      Berkley Violated the *Stowers* Doctrine By Rejecting the Milburn Demand.

#### 1.      The *Stowers* Doctrine creates heightened protection for insureds.

In Texas, under the longstanding *Stowers* Doctrine, if an insurer has "absolute and complete control" of a litigation involving an insured—as Berkley did here, *see* Ex. 2 § IIE—it has a "corresponding duty and obligation . . . to exercise that degree of care that a person of ordinary care and prudence would exercise under the same or similar circumstances."  *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. 1929).  This duty requires an insurer to exercise care and diligence—similar to that which a prudent insurer would exercise in managing its own business—when responding to settlement demands within policy limits.  *Id.*  Failure to exercise such care amounts to negligence on the part of the insurer.  *Id.*  In practical terms, this means that if an insurer rejects a reasonable, within-policy-limits settlement demand, the insurer is liable under *Stowers* for any resulting settlement or judgment in excess of the policy limits.  *Id.*

The *Stowers* Doctrine serves the unique purpose of protecting the insured in situations

12

involving third-party claims (like the Milburn Lawsuit), where the claimant is an insured's adversary, and thus the insured would not reject a demand within policy limits. *See Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 319 (Tex. 1994) (Cornyn, J., concurring). By imposing a common-law duty of care on the insurer, the *Stowers* Doctrine forces an insurer to gamble with its own money (and not that of the insured) if the insurer chooses to reject a reasonable, within-policy-limits settlement offer and instead risks taking the case to trial. *Id.* In comparing the *Stowers* negligence standard to the good faith standard used in other jurisdictions, courts have emphasized that *Stowers* creates heightened protection for insureds. *Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches*, 215 S.W.2d 904, 927 (Tex. App.—Beaumont 1948, writ ref'd n.r.e.) (explaining that the good faith standard adopted in other jurisdictions merely requires "some basis in reason for [an] Insurer's act," and that "the [negligence] standard of conduct governing [an] Insurer in Texas is much stricter than is the standard of good faith"); *Ranger Cnty. Mut. Ins. Co. v. Guin*, 704 S.W.2d 813, 818 (Tex. App.—Texarkana 1985), *aff'd*, 723 S.W.2d 656 (Tex. 1987) (similar). Stated simply, when an insurer's *Stowers* duty is triggered, it cannot be ignored without facing clear and well-established consequences, *i.e.*, extra-contractual liability.

### 2. Berkley is liable under *Soriano* and its progeny for negligently rejecting a *Stowers* Demand.

*Soriano* permits an insurer in receipt of a *single*, within-policy-limits demand to accept that demand and settle with one of several claimants or on behalf of one of several insureds even though doing so might exhaust or diminish the money available to satisfy future *potential* claims or demands. *See Soriano*, 881 S.W.2d at 315; *Travelers Indem. Co. v. Citgo Petrol. Corp.*, 166 F.3d 761 (5th Cir. 1999); *Pride Transp. v. Cont'l Cas. Co.*, 511 F. App'x 347 (5th Cir. 2013). Critically, this rule only applies if no other *Stowers* demand is pending *prior to* the insurer's acceptance of the first demand and settlement of that claim. *See Soriano*, 881 S.W.2d at 315–16 ("In the absence

13

of any evidence of a demand within policy limits *prior to* the Lopez settlement, Farmers had no duty to settle the Medinas' claims." (emphasis added)); *Citgo*, 166 F.3d at 768 ("[U]nder Texas law an insurer is not subject to liability for proceeding … with a reasonable settlement [that] eliminates … coverage for a co-insured *as to whom no Stowers demand has been made*." (emphasis added));[4] *Pride*, 511 F. App'x at 351 ("The parties agree that the insurers *did not reject any demands* for Pride *or* Harbin. Instead, this case involves the insurers' liability for accepting a demand. . . . [T]he *Stowers* duty imposes liability on insurers *who reject reasonable demands covered under their policies*." (emphasis added)).

No Texas court has confronted the unique situation presented here—*i.e.*, two simultaneously-pending, within-policy-limits settlement demands that in total exceed the policy limits. But that does not mean that Berkley was left in the dark as to how to proceed. To the contrary, binding authority provides substantial guidance on how such a case should be resolved. As the Texas Supreme Court made clear in *Soriano*, an insurer is liable for settling one claim and failing to settle another if the insurer (1) "negligently rejected a demand … within policy limits" for the claim it failed to settle, *or* (2) the settlement that the insurer did reach was "itself unreasonable." 881 S.W.2d at 315. In other words, even if both pending demands were *Stowers* demands (as the Milburn Demand certainly was), Texas law does not allow an insurer to simply accept one and reject the other without consequence. And that is exactly what Berkley did here in rejecting the Milburn Demand—it "negligently rejected a demand . . . within policy limits." *Id.* Thus, Berkley's *Stowers* liability to Oxy falls squarely within the test announced in *Soriano*.

Berkley's liability also comports with public policy. The holdings of *Soriano* and its

---

[4] Notably, *Citgo* expressly clarified that its holding did not apply where there are "multiple and concurrent outstanding separate *Stowers* demands as to different insureds where the demands in total exceed the policy limits." *Id.* 166 F.3d at 768 n.7.

14

progeny—that an insurer may settle one claim even if it erodes available policy limits for claims that have not yet materialized or insureds to whom no settlement demand has been made—prioritize *actual pending settlement demands* over *hypothetical future claims or demands*. *Soriano*, 881 S.W.2d at 314–15. This makes sense when there is only one existing demand—it allows an insurer to "focus on only the claim actually before it," *Citgo*, 166 F.3d at 767, which "encourages claimants to make their claims promptly," *Soriano*, 881 S.W.2d at 315. But here, of course, the Milburn Demand was "actually before" Berkley, and the Milburn claimants made their claims promptly in the form of a settlement demand within then-available policy limits. Unlike in the *Soriano* line of cases, where the insurers were faced with one actual demand within policy limits and mere hypothetical or potential future claims, here Berkley was faced with two *already filed lawsuits*, and two *concurrently pending settlement demands* within policy limits.

Berkley nevertheless rejected the Milburn Demand even though that demand indisputably satisfied all of the *Stowers* elements. *Supra* ¶ 14. That negligent rejection violated Berkley's *Stowers* duty to Oxy, and no Texas case provides Berkley with an escape hatch from liability. In fact, the relevant cases say precisely the opposite. *See Soriano*, 881 S.W.2d at 315 ("[The insurer] cannot be liable for negligently failing to settle [remaining] claims *unless* there is evidence that . . . [the insurer] negligently rejected a demand from the [claimant] within policy limits." (emphasis added)); *Pride*, 511 F. App'x 347 (same); *see also Am. W. Home Ins. Co. v. Tristar Convenience Stores, Inc.*, 2011 WL 2412678, at *4 (S.D. Tex. June 2, 2011) ("Indeed, it is the *rejection* of [an] offer that may subject [the insurer] to *Stowers* liability."). In short, this is not a *Soriano* case, and binding authority establishes that an insurer cannot do what Berkley did—that is, reject a valid *Stowers* demand and force its insured to incur excess liability. *See Soriano*, 881 S.W.2d at 315.

15

**3.    Berkley's *Stowers* duty to Oxy was triggered well before the Perez Demand was accepted, and Berkley deliberately violated that duty.**

There can be no dispute that Berkley's *Stowers* duty to Oxy was triggered before the Perez Demand was accepted, that the Milburn and Perez Demands were pending simultaneously, and that Berkley deliberately ignored its *Stowers* duty to Oxy, simply choosing to elevate the Perez defendants over Oxy. As a result, Berkley is liable to Oxy in excess of the policy limits under the *Stowers* Doctrine.

Berkley's *Stowers* duty to Oxy was triggered when Berkley was "presented" with the Milburn Demand on March 19. *See ACE Am. Ins. Co.*, 990 F.3d at 851–52. At that time, it is indisputable that Berkley had not yet accepted the Perez Demand and that the available policy limits were $21 million. To be clear: when the Milburn Demand came in, there was *no settlement* in Perez—formal, informal, or otherwise. As Berkley itself has explained:

> MR. RYMER: But a *Stowers* demand is accepted, let's be clear. It's not when the final papers are signed. It's when there is -- like any other settlement, it's finalized when a letter says, "Here's our demand, we'll settle," and we say, "We accept."
>
> THE COURT: When did that happen? …
>
> MR. RYMER: It was accepted by announcing to Perez, and admittedly that was after the Milburn [Demand] came in.

MTD & MSJ Tr. at 49:8-50:4; *see also Est. of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000) (explaining that under Texas law, a settlement agreement must be in writing, signed *by both parties*, and filed with the court). The two demands were pending simultaneously, and any uncommunicated or internal-only decision Berkley alleges to have made about its intent to accept the Perez Demand is irrelevant.

Indeed, regardless of what Berkley had internally intended to do with the Perez Demand before it received the Milburn Demand on March 19, Berkley was required to reevaluate and take a different course of action in light of Berkley's *Stowers* duty to Oxy. As Berkley has admitted, it

16

is required to "independently evaluate" *Stowers* demands. *See* MTD & MSJ Tr. at 13:21-22. So even assuming that the Perez Demand was a valid *Stowers* demand and that Berkley had a *Stowers* duty to its insureds in Perez, Berkley had the *exact same* independent duty to Oxy. But Berkley utterly abandoned its duty to Oxy by rejecting the Milburn Demand.

Berkley has no excuse under Texas law for ignoring its *Stowers* duty to Oxy. Berkley asserts that it could not alter course in the Perez Lawsuit after receiving the Milburn Demand because doing so would have left the Perez defendants unprotected and would have resulted in excess liability in that case. *Id.* at 53:12-13, 56:23-25. But this reasoning is fatal to Berkley's defense: Berkley's refusal to take a different course of action left *Oxy*—its insured in the Milburn case—unprotected and resulted in *Oxy* incurring excess liability in the Milburn Lawsuit. According to Berkley, then, in the face of two competing policy-limit demands, an insurer can just pick the one it feels like resolving and entirely ignore its *Stowers* duty to the other. But there is not a single case giving Berkley the right to choose one insured over another when there are multiple, within-policy-limit demands pending simultaneously. Here, Berkley made a deliberate decision to reject a *Stowers* demand, and it now must face the consequences for having done so.

This is all the more so because, as discussed below, Berkley was not required to remain in limbo indefinitely, nor was it required to unilaterally choose between the insureds to whom it owed equal duties. Instead, Texas law provided Berkley with clear guidance on how to proceed and how to avoid excess liability, guidance that Berkley ignored to its detriment.

### 4. An insurer faced with two settlement demands that exceed policy limits should interplead the funds.

Under Texas law, if it was unwilling or unable to globally mediate or equitably apportion the limits of the Policies, Berkley should have filed an interpleader action, which would have protected all of its insureds to the full extent possible and allowed Berkley to avoid extra-

17

contractual liability.  In Texas, interpleader actions exist for this very purpose—to provide "relief for a stakeholder who, without interpleader, would be compelled to act as judge and jury at its own peril when faced with conflicting claims." *Tri-State Pipe & Equip., Inc. v. S. Cnty. Mut. Ins. Co.*, 8 S.W.3d 394, 402 (Tex. App.—Texarkana 1999, no pet.); *see also State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 806 (Tex. 2007) (same).  The Texas Supreme Court has instructed that where there are multiple claimants, and "reasonable doubt exists in law or fact as to whom the proceeds belong," an insurer "*should* interplead them and let the courts decide." *Martinez*, 216 S.W.3d at 806 (emphasis added).  *Tri-State Pipe & Equipment*, 8 S.W.3d at 40, is particularly instructive here.  In that case, the Texas Court of Appeals held that an insurance company "properly deposited [its insurance benefits] with the court" when multiple tort claimants in a personal injury lawsuit "all had rival claims to the same … proceeds of the policy."  This case is indistinguishable.  And here, where Berkley has admitted that it would have accepted the Milburn Demand but for the Perez Demand, TRO Tr. at 22:3-16, there is far more than "reasonable doubt … as to whom the proceeds belong." *Martinez*, 216 S.W.3d at 806.  The correct path forward—interpleader—was clear.

What would have happened if Berkley had interpled the funds?  It is, of course, possible that the plaintiffs in either case—faced with limited funds and two competing demands for them—would have accepted a lower settlement.  But whether or not that occurred, the Court would have had the ability to fairly and equitably allocate the funds, with the result that one or both of the insureds (Oxy or ConocoPhillips) might have had to make up the shortfall.  Critically, though, Berkley would have been "*relieved from the potential liability* to pay the single fund more than once." *Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 401 (Tex. App.—Beaumont 2009, no pet.) (emphasis added).  Yet even after this Court suggested in the TRO hearing that interpleader was a sensible course of action, *see* TRO Tr. at 18:1-4; MTD & MSJ Tr. at 37:17-38:2, Berkley

18

rejected this approach and instead reiterated its position that it had the authority to decide which insured got coverage. This means that Berkley deliberately chose a course of action that exposed it to liability, *see* TRO Tr. at 27:19-21, over one that would have relieved it of liability, *see Clayton*, 284 S.W.3d at 401. With this backdrop, the Court should not hesitate to impose liability on Berkley—it had a clear path through the thicket that it inexplicably chose not to take.

## II.    OXY IS ALSO ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT AND TEXAS INSURANCE CODE CLAIMS (COUNTS I, III, AND IV).

*First*, "[a] breach of contract is a matter of law appropriate for summary judgment where the contract's terms are clear, and the contract is not ambiguous." *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, 48 F. Supp. 3d 984, 988 (W.D. Tex. 2014). Here, Berkley breached its contractual obligations to Oxy by not paying the full Milburn settlement. It is undisputed that Oxy qualifies as an additional insured under the Policies, *supra* ¶ 2; that the claim in the Milburn Lawsuit is covered under the Policies, *supra* ¶ 5; that Berkley must therefore indemnify Oxy for any judgment or settlement in the Milburn Lawsuit, *supra* ¶ 5; and that Berkley has flatly refused to do so—in violation of its *Stowers* duty and Texas law—beyond offering the $1 million primary policy limit, Ex. 15; *supra* ¶ 14. Oxy has suffered damages as a result of Berkley's breach, *i.e.*, the ▮▮▮▮▮▮ in excess of the $1 million Berkley contribution, and the costs, including attorneys' fees, it incurred to pursue its rights under Texas law and the relevant Policies.[5]

*Second*, Oxy is also entitled to summary judgment on its Texas Insurance Code claims. An insurer violates § 541.600 of the Texas Insurance Code by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code § 541.060(a)(2)(A). The elements to

---

[5] Once this Court decides liability, Oxy will submit its claim for attorneys' fees.

establish a statutory violation for a failure to settle are identical to those needed to establish a common law *Stowers* violation. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002). And an insurer engages in "an unfair or deceptive act or practice in the business of insurance" when it "misrepresents an insurance policy by . . . making a material misstatement of law." Tex. Ins. Code § 541.061(4).

For the reasons articulated above, Berkley is liable to Oxy under Texas Insurance Code § 541.060 due to its intentional and bad faith refusal not to accept the Milburn Demand. *See OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 681 (5th Cir. 2016) (explaining that, for the same conduct and refusal to settle a claim, separate judgments can be entered against a defendant for violating Chapter 541 and *Stowers*). Oxy is also entitled to summary judgment on its Texas Insurance Code § 541.061 claim because Berkley misrepresented its coverage through material misstatements of the law—*i.e.*, the misrepresentation that Berkley was entitled to reject the Milburn Demand and ignore its *Stowers* duty to Oxy because Texas law allowed it to accept the Perez Demand instead and exhaust the policy limits. Berkley TRO Resp. ¶¶ 19–25.

## CONCLUSION

For the foregoing reasons, Oxy respectfully requests that this Court enter summary judgment in favor of Oxy on all of its claims against Berkley.

Dated: April 28, 2025

Respectfully submitted,
*/s/ Peter D. Laun*
Peter D. Laun (*attorney-in-charge*)
Bar Nos. 24108952 / 618314
Sidney S. McClung
Catherine Meili Playko
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, Texas 75201
Telephone: (214) 220-3939
pdlaun@jonesday.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 28, 2025, the foregoing Plaintiffs' Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. I also certify that the foregoing and all exhibits were served to all counsel of record via electronic mail.

*/s/ Peter D. Laun*
Peter D. Laun