**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| OXY USA, INC., OCCIDENTAL PERMIAN LTD., ANADARKO PETROLEUM CORP., AND ANADARKO E&P ONSHORE LLC, Plaintiffs, | § § § § § | |
| v. | § § | CIVIL ACTION NO. 4:24-CV-1309 |
| BERKLEY NATIONAL INSURANCE COMPANY, Defendant. | § § § § | |

**DEFENDANT BERKLEY NATIONAL INSURANCE COMPANY'S**
**12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, BERKLEY NATIONAL INSURANCE COMPANY ("BNIC"), Defendant in the above-styled and numbered cause, and files this 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint, and in support thereof would respectfully show the Court as follows:

**I.**
**STATEMENT OF THE CASE**

1. On March 28, 2025, this Court granted Berkley National Insurance Company's ("BNIC") Rule 12(b)(6) Motion to Dismiss, and granted Plaintiffs leave to amend their complaint. ECF No. 52. In turn, Plaintiffs (collectively, "Oxy") filed their First Amended Complaint (the "Amended Complaint"). ECF No. 55. In their Amended Complaint, Oxy continues to allege causes of action against BNIC for breach of the *Stowers* duty, breach of contract, and violations of the Texas Insurance Code ECF No.55 at pp.14-19. Importantly, all of these claims are predicated upon BNIC not accepting a settlement demand in one lawsuit, because it exhausted its excess policy limit in settling an unrelated case. All of Oxy's causes of action purport to arise out of an alleged breach of the *Stowers* duty under Texas law. However, no *Stowers* duty has been triggered, and

BNIC's conduct is wholly consistent with current Texas law. Oxy's requested relief in the Amended Complaint would require this Court to rewrite Texas Law, not once, but twice. Thus, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because the factual allegations, when taken as true, do not plausibly give rise to an entitlement to relief.

## II.
## INTRODUCTION

### A. Summary of the Facts

2.      The Amended Complaint alleges that Lynx Pressure Solutions, LLC ("Lynx") purchased two insurance policies from BNIC for the policy period of June 7, 2021 to June 7, 2022, including Commercial General Liability Policy No. EGL003839811 (the "Primary Policy"), and Commercial Umbrella Liability Policy No. EUL003839911 (the "Umbrella Policy" and, collectively, the "Policies"). ECF No. 55 at pp. 6-7. The Primary Policy has a limit of liability of $1,000,000.00 per occurrence, and $2,000,000.00 in the aggregate. *Id.* The Umbrella Policy has a $20,000,000.00 limit of liability per occurrence and in the aggregate. *Id.*

3.      In the Amended Complaint, Oxy alleges that it is an "Additional Insured" under the Policies with respect to an injury lawsuit filed against Oxy, styled *Vaughn Milburn, et ux. v. Oxy USA, Inc. et al.*, under Cause No. 2022-06619 in the 152nd District Court of Harris County, Texas (the "*Milburn* Lawsuit"), pursuant to a contract between an Oxy affiliate and Lynx. ECF No. 55 at p. 5-6.

4.      Oxy further alleges that in addition to defending Oxy in the *Milburn* Lawsuit under the Policies, BNIC was also defending another lawsuit involving Lynx styled *Viktorya Lee Perez et al. v. ConocoPhillips et al.*, under Cause Number 2021-58165 in the 125th District Court of Harris County, Texas (the "*Perez* Lawsuit"), and that the alleged injury in the *Perez* Lawsuit fell within the same policy period as the *Milburn* Lawsuit. *Id.* at p.2. Oxy alleges that the relevant

policy limits (for the two cases) totaled $22 million. *Id.*

5.    The Amended Complaint alleges that on March 8, 2024, the plaintiffs in the *Perez* Lawsuit (the "*Perez* Plaintiffs") made a policy-limits settlement demand in the amount of $21 million (the "*Perez* Demand"), and on March 13, 2024, BNIC notified Oxy that it intended to accept the *Perez* Demand, exhausting the limits of the Umbrella Policy, and leaving only $1 million under the Primary Policy available for the *Milburn* Lawsuit. ECF No. 55 at pp. 2, 9, 12. Then on March 19, 2024, eleven (11) days after the *Perez* Demand and six (6) days after Oxy was notified of BNIC's decision to accept the *Perez* Demand, the plaintiffs in the *Milburn* Lawsuit (the "*Milburn* Plaintiffs") first made a settlement demand within policy limit (the "*Milburn* Demand"). *Id.* at p. 9. The dollar amount of the *Milburn* Demand is redacted in the Amended Complaint due to confidentiality concerns, but is unredacted in Exhibit 1 to Oxy's Motion for Leave to File Under Seal. ECF No. 55 at p. 9; ECF No. 53 and 53-1. Oxy alleges that on March 28, 2024, BNIC informed Oxy that it accepted the *Perez* Demand for $21 million and exhausted the limit of the Umbrella Policy. ECF No. 55 at p. 12.

6.    The Amended Complaint further alleges that on May 15, 2024, Oxy accepted the *Milburn* Demand. ECF No. 55 at p. 12. The settlement of the *Milburn* Lawsuit was completed on or about July 15, 2024, with BNIC paying $1 million of the settlement amount from the Primary Policy, and Oxy paying the remainder of the settlement amount (the "*Milburn* Settlement"). ECF No. 55 at pp. 12-13. The dollar amount of the *Milburn* Settlement is redacted in the Amended Complaint due to confidentiality concerns, but is unredacted in Exhibit 1 to Oxy's Motion for Leave to File Under Seal. ECF No. 55 at p. 3, 11-12, 16; ECF No. 53 and 53-1. Importantly, Oxy settled the *Milburn* Lawsuit for the same amount as the *Milburn* Demand. *Id.*

## B. Summary of the Argument

7.    The crux of Oxy's alleged claim is that BNIC wrongfully accepted a *Stowers* demand in the *Perez* Lawsuit, leaving reduced limits available for the *Milburn* Lawsuit. Oxy attempts to couch its claim as a *Stowers* cause of action. However, no valid *Stowers* cause of action has been alleged. The Texas Supreme Court in *Soriano* provided binding authority for how insurers are to proceed in this situation, and BNIC followed the letter of the law. Specifically, in *Soriano*, the Texas Supreme Court held that "when faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." Here, BNIC accepted the first received *Perez* Demand, even though it reduced the available limits for the subsequent *Milburn* Demand.

8.    Oxy asks this Court to create new law in two different ways. First, Oxy's requested relief requires this Court to create an exception to *Soriano* that does not exist. Oxy contends that BNIC, when faced with competing settlement demands in unrelated lawsuits, should have interpleaded the funds into the registry of a court. However, Texas case law makes clear that interpleader is not a realistic solution to a *Soriano* situation, because interpleader fails to protect the insured from excess exposure, and it fails to eliminate any *Stowers* liability for the insurer.

9.    Oxy's requested relief also requires this Court to change what constitutes damages in a *Stowers* case. *Stowers* is a negligence cause of action that, like any other negligence claim, requires damages that are proximately caused by the defendant's breach of a legal duty. The Amended Complaint alleges that the *Milburn* Lawsuit was settled for the exact same amount as the *Milburn* Demand. Thus, any alleged negligence of BNIC did not change the outcome of the underlying litigation, or result in any excess exposure by judgment or settlement.

4

**II.**
**ARGUMENT AND AUTHORITY**

### A.  12(b)(6) Standard

10.    Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, that when accepted as true, plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Conclusions not supported by factual allegations are not accepted as true. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant could be liable for the misconduct alleged. *Id.*

### B.  The Amended Complaint does not allege a *Stowers* claim

11.    Under Texas law, erosion of policy limits through settlement of an unrelated claim– or even a related claim–does not violate *Stowers*. *See Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994). Texas law expressly permits–and requires–an insurer to fulfill its *Stowers* duty by paying its policy limits in settlement with one claimant, even though the result of that settlement is to leave an insured with reduced insurance limits for other claims. *Id.* In *Soriano*, the Texas Supreme Court held that "when faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." *Id.*

12.    Following *Soriano,* the Fifth Circuit in *Travelers Indem. Co. v. Citgo Petro. Corp.* applied *Soriano* to cases involving multiple insured defendants. 166 F.3d 761, 768 (5th Cir. 1999). The case stemmed from a fatal accident involving a tanker truck, where Citgo was an additional insured under the Travelers policies. *Id.* at 763. The plaintiffs initially sued only the driver, and

settled with the driver after a policy limit demand was made on the driver only, for the full policy limits of $1,500,000.00. Later, when Citgo was sued, Travelers denied coverage, citing policy exhaustion. *Id.* at 763-64. Citgo then brought a coverage action against Travelers. On appeal, the Fifth Circuit followed the Texas Supreme Court's decision in *Soriano*. *Id.* at 764-65. Importantly, the Court confirmed the rule that requires the insurer "to focus on only the claim actually before it . . . ." *Id.* at 767.

13.     More recently, the Fifth Circuit upheld a district court decision which held that an insurer fulfills its *Stowers* duty by paying its policy limit to settle claims against one insured defendant, even though the result is to eliminate coverage for the other insured defendant in the same lawsuit. *See Pride Transp. v. Cont'l Cas. Co.*, 804 F. Supp. 2d 520 (N.D. Tex. 2011), *aff'd*, 511 Fed. App'x. 347 (5th Cir. 2013). In *Pride*, the driver of a semi-trailer truck struck a pickup truck, causing the driver to sustain severe injuries. *Id.* at 523. The injured driver sued *Pride* Transportation, the motor carrier, and the driver of the semi-trailer truck. *Id.* The insurers received a settlement demand for the combined policy limits of the primary and excess policies that offered a release of only the claims against the driver, not *Pride*. *Id.* at 524. The demand was accepted, and *Pride* subsequently filed suit. *Id.*

14.     The Fifth Circuit held on appeal that *Pride* failed to meet its burden of showing "that a reasonably prudent insurer would not have settled the [driver's] claim when considering solely the merits of the [driver's] claim and the potential liability of its insured on the claim." 511 Fed. App'x at 352 (citing *Soriano*, 881 S.W.2d at 316).

15.     The Amended Complaint alleges that BNIC accepted the *Perez* Demand, thereby reducing the policy limits available for the *Milburn* Lawsuit. However, this claim fails to state a cause of action under *Soriano*, where the Texas Supreme Court expressly held that "when faced

6

with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." *Soriano*, 881 S.W.2d at 315. Thus, the alleged conduct, that forms the basis of Oxy's purported *Stowers* claim, is expressly permitted by Texas law. BNIC accepted the *Perez* Demand that was received prior to the *Milburn* Demand. Accordingly, even assuming the factual allegations in the Amended Complaint to be true, there is no plausible *Stowers* claim.

16.     Even though the *Milburn* Demand did not even exist at the time BNIC decided to accept the *Perez* Demand, assuming arguendo, a hypothetical example of two simultaneously received *Stowers* demands, the result under Texas law does not change. Oxy incorrectly takes the position that the law allowing an insurer to enter into a reasonable settlement of one claim ("claim A") even though it reduces insurance proceeds available for another claim ("claim B") (the "*Soriano* rule") does not apply if there is a simultaneous *Stowers* demand pending as to claim B before the insurer accepts the *Stowers* demand in claim A. However, there exists no exception to the *Soriano* rule, even where there exists a simultaneous *Stowers* demand pending as to claim B. The only possible argument that an exception may one day be recognized comes from a single footnote in *Citgo* where the Fifth Circuit stated "[w]e do not address the duties of an insured faced with multiple and concurrent separate *Stowers* demands as to different insureds where the demands in total exceed policy limits." *Citgo*, 166 F.3d at 768 n. 7. This footnote exists because the fact pattern of two simultaneous *Stowers* demands was not presently before the *Citgo* court. However, *Citgo* did not recognize an exception to the *Soriano* rule.

17.     The *Citgo* opinion was issued twenty-six (26) years ago, and in that intervening period, additional opinions have been issued that make clear how this issue should be resolved.

Fourteen (14) years after *Citgo*, the Fifth Circuit had an opportunity to insert interpleader into *Stowers* situations with its decision in *Pride*. In *Pride,* the insurer accepted a *Stowers* demand that resulted in a release for one insured defendant, but not the other, in the same lawsuit. There is no difference between the impact of the settlement that exhausted the insurance limits in *Pride,* and the impact of the *Perez* Settlement on Oxy in this case. In each case, the unsettled claim had to be paid by the insured, because insufficient insurance limits remained to settle the claim. Further, as discussed in detail below, the Southern District very recently issued an opinion holding that interpleader does not solve a *Stowers* situation, or limit *Stowers* exposure for the insurer. *See*, *United Wisconsin Ins. Co. v. Wang*, 2025 WL 895837 (S.D. Tex. Mar. 22, 2025). This makes clear that the rationale for the decisions in *Soriano*, *Citgo*, and *Pride* applies equally here. BNIC followed the letter of the law–namely that an insurer may enter into a reasonable settlement of one claim (the *Perez* Lawsuit) even though it reduces insurance proceeds available for another claim (the *Milburn* Lawsuit). Oxy is asking this Court to make new law by creating an exception to *Soriano* that does not exist. More importantly, the exception Oxy seeks creates more problems than it solves. If this Court creates an exception to the *Soriano* rule, it will place both insureds and insurers in greater risk of exposure to excess verdicts and bad faith litigation.

    C.  **<u>Interpleader was not an option</u>**

18.    In the Introduction and Factual Background sections of the Complaint, Oxy indicates that BNIC should have interpleaded the policy limits, rather than accepting the *Perez* Demand. However, interpleader is not a realistic option because it neither caps the underlying insured's potential excess liability to a third-party, nor does it absolve the insurer from *Stowers* liability.

19.     If interpleader is allowed in *Stowers* situations involving multiple claims or claimants, there would be no need for *Soriano* and its progeny to even exist, because an insurer could simply interplead its limits in any situation where there is a *Stowers* demand for one insured, but not all insured defendants, or where there are other pending claims (as is often the case) against insureds that would not be settled by accepting that *Stowers* demand. The insurer in *Pride* faced this precise dilemma when it chose to accept a *Stowers* demand to one insured defendant, but not the other insured defendant in the same case. *Pride*, 804 F. Supp. 2d at 524. Using Oxy's flawed logic, the insurer in *Pride* should have interpled, because it would have avoided the decision to settle on behalf of one insured, to the exclusion of the other. Under this flawed reasoning, interpleader would have allowed the insurer to "wash its hands" of the problem, leaving both of its insureds to face excess judgements. However, the Fifth Circuit found that the insurer's conduct was correct, and consistent with longstanding Texas case law. 511 Fed. App'x at 352. Courts cannot resolve a *Stowers* situation by interpleader, nor can courts force tort claimants to settle their tort claims for some "equitable" amount within the available policy limits. The only realistic solution for resolving two or more simultaneous *Stowers* demands lies with *Soriano* and its progeny— exactly what BNIC did in this case.

20.     If BNIC had interpleaded its policy limits, the underlying plaintiffs in the *Perez* Lawsuit would have proceeded to trial, and likely obtained an excess verdict against the insureds in that case. Then BNIC would have faced *Stowers* exposure to the insureds in the *Perez* Lawsuit as a result of that excess verdict. Nothing about interpleader prevents a tort claimant from continuing to pursue its tort claims against a negligent defendant, or prevents a subsequent *Stowers* case after an excess verdict.

21.    This reality was analyzed in some detail in a recent March 2025 opinion from the Southern District of Texas. *See*, *United Wisconsin Ins. Co. v. Wang*, 2025 WL 895837 (S.D. Tex. Mar. 22, 2025). In *Wang*, the Southern District held that interpleader does not shield the insurance company from potential *Stowers* liability in excess of the policy limits. *Id.* at \*5-6. As noted in the *Wang* Opinion, interpleader is "not a 'bill of peace' or 'legal vacuum cleaner' intended to suck up all related claims into a single proceeding … **Stowers claims thus fall outside the scope of interpleader.**" *Id. at 5. (emphasis added)* Perhaps due to this new March 2025 opinion from the Southern District, Oxy chose to drop its "equitable division of the policy limits" cause of action that was previously asserted in its Original Petition. The Southern District in *Wang* noted that interpleader is simply a "procedural device used to resolve conflicting claims to money or property." *Id.* The Southern District concluded that if a future *Stowers* case accrues, it is not prevented by the interpleader of funds. *Id.* at 6. This recent opinion reiterates why *Soriano* remains the law on how insurers should proceed in this situation, and BNIC followed that law. Interpleader was not a viable option.

22.    The inapplicability of interpleader in a *Stowers* context was also explained in the dissent to the San Antonio Court of Appeals opinion in *Soriano*, that was subsequently reversed by the Texas Supreme Court. *See Texas Farmers Ins. Co. v. Soriano*, 844 S.W.2d 808, 843 (Tex. App.—San Antonio 1992) (Peeples, J., dissenting), *reversed*, 881 S.W.2d 312 (Tex. 1994). This dissent from the San Antonio Court of Appeals provides a detailed discussion of why interpleader is not a realistic solution to a *Soriano* situation, and leaves the insured unprotected against a potential excess verdict. *Id.*

23.     Even the Texas Supreme Court has briefly opined that an insurer who refuses to accept a reasonable *Stowers* demand and then pays its "policy limits into the court registry" is leaving the insured exposed to an excess judgment, and importantly, that the interpleader itself may constitute an unfair insurance practice. *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842, 847 fn. 11. In analyzing the holding from a lower court case, the Texas Supreme Court made this important statement about interpleader in a "*Stowers*" context: "Significantly, after Allstate refused to settle, it sought to pay its policy limits into the court registry and leave its insured exposed in the event of an excess judgment." *Id.*

24.     Again, BNIC's alleged conduct, which forms the basis of Oxy's purported *Stowers* claim, is expressly permitted under Texas law. Accordingly, assuming the factual allegations in the Amended Complaint to be true, there is no plausible claim that BNIC should have interpleaded the funds under any of the causes of action asserted in the Amended Complaint.

### D.  Oxy Fails to Allege *Stowers* Damages.

25.     The Amended Complaint alleges that Oxy accepted the *Milburn* Demand by the *Milburn* Plaintiffs, and was forced to pay a portion of that settlement amount due to the exhaustion of the Excess Policy limit. ECF No.55 at p.12. However, there was no difference between the amount of the *Milburn* Demand and the *Milburn* settlement. Thus, Oxy's real allegation is that BNIC only funded a portion of the *Milburn* Settlement—with the remaining $1,000,000.00 limit from the Primary Policy. This allegation does not trigger the excess judgment or settlement damages requirement of *Stowers*. When a settlement demand within policy limits is made, that an ordinarily prudent insurer would accept, and "the insurer's negligent failure to settle results in an excess judgment [or settlement] against the insured, the insurer is liable under the *Stowers* doctrine …" *In re Farmers Texas County Mutual Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021). A *Stowers*

claim is a tort. *Id.* at 275. "As in any case predicated on negligence, the insured must also offer evidence that the insurer's negligent failure to settle proximately caused damages to the insured." *Soriano*, 881 S.W.2d at 316, fn. 4 ("… *Soriano* had the burden of proving that he would have suffered a lesser amount of damages had Farmers behaved differently …"). It is fundamental to a *Stowers* claim that the insurer's negligence proximately caused damages; in other words, it is fundamental that the insurer's negligent failure to settle negatively impacted the outcome of the underlying case. *See, e.g.*, *American Guarantee and Liability Ins. Co. v. ACE American Ins. Co.*, 990 F.3d 842 (5th Cir. 2021)(insurer declined $2 million settlement, and judgment was entered after trial for $28 million); *Westport Ins. Corp. v. Pennsylvania National Mutual Casualty Ins. Co.*, 2018 WL 6313478 (S.D. Tex. Aug. 31, 2018)(pre-trial settlement demands were $2 million and $3.6 million, and judgment was $8,738,598.00) *American Empire Surplus Lines Ins. Co. v. Occidental Fire & Casualty of North Carolina*, 2015 WL 4496699 at *1 (S.D. Tex. July 22, 2015)(primary carrier refused primary layer policy limits demand, and later settlement by excess carrier was $300,000.00 above the primary policy limits).

26.    In this case, Oxy, using a $1,000,000.00 contribution from BNIC, settled the *Milburn* Lawsuit for the exact same amount as the *Milburn* Demand. Thus, any alleged negligence by BNIC did not change the outcome to result in an excess verdict or settlement. Oxy is asking this Court to make new law, not just by way of an exception to *Soriano*, but also by recognizing a *Stowers* claim against an insurer when the ultimate settlement or judgment is the same as, or less than, the settlement demand at issue. This is not the law in Texas.

27.    The following hypothetical highlights the fallacy of Oxy's position. Like as here, this hypothetical involves two separate claims occurring during the same policy period. Claim A is covered by both the primary policy and the excess policy, but Claim B is only covered by the

primary policy due to a unique exclusion contained in the excess policy (i.e. an Absolute Pollution Exclusion). The Plaintiff in Claim A makes a *Stowers* demand for the $1,000,000.00 primary limit, which is rejected by the primary insurer. Prior to trial in Claim A, the primary insurer receives a *Stowers* demand in Claim B, and settles Claim B for $800,000.00, reducing the remaining primary limit to $200,000.00. The excess insurer receives no real benefit from this settlement of Claim B because they did not have coverage for Claim B. Claim A then proceeds to trial and the jury awards $1,000,000.00 in damages—the same amount as the *Stowers* demand. The excess insurer now has to pay $800,000.00 on Claim A, when they would have paid $0 if the claim had been settled by the primary carrier at the time of the initial *Stowers* demand.

28.     This hypothetical would not create a *Stowers* claim for the excess insurer, even though the excess carrier paid $800,000.00 that they would not have been required to pay had the primary carrier accepted the *Stowers* demand in Claim A. The alleged failure to accept the *Stowers* demand in Claim A did not result in an increased exposure in Claim A, by judgment or settlement. Instead, it simply required a different party to pay a portion of the verdict amount. The Amended Complaint does not allege that BNIC's "rejection" of the *Milburn* Demand resulted in an excess exposure. Instead, the allegation is that BNIC's decision to accept the *Perez* demand meant that Oxy was required to fund a portion of the settlement amount, rather than BNIC funding the entire settlement. This lack of an excess judgement or settlement fails to trigger a *Stowers* cause of action, because BNIC's alleged conduct did not change the result of the case.

29.     This lack of damages is supported by the fact that BNIC did not actually "reject" the *Milburn* Demand. In the Amended Complaint, Oxy alleges that BNIC "rejected" the *Milburn* Demand. However, the use of the word "rejected" is conclusory, and is negated by the factual allegations in the Complaint. Specifically, Oxy clarifies that BNIC "rejected" the *Milburn* Demand

13

"by refusing to accept and pay it in full." ECF No. 55 at p. 11. Oxy later acknowledges in the factual allegations that Oxy accepted the *Milburn* Demand. ECF No. 55 at p. 12. Under contract principles, once an offer is rejected, it is terminated, and the rejecting party cannot thereafter accept it. *Figueroa v. Davis*, 318 S.W.3d 53, 68-69 (Tex.App.—Houston [1st Dist.] 2019, no pet.). Thus, the *Milburn* Demand was never "rejected," and Oxy settled the *Milburn* Lawsuit for the exact same amount as the *Milburn* Demand. Again, any alleged negligence by BNIC did not change the outcome. Accordingly, assuming the factual allegations in the Amended Complaint to be true, there is no plausible *Stowers* claim for this additional reason.

### D. Insurance Code Claims

30.    **The lack of a plausible *Stowers* claim precludes Oxy's Insurance Code claim**. In the Amended Complaint, Oxy asserts claims under Texas Insurance Code §541.060 and §541.061. However, the only third party claims allowed under Chapter 541 of the Texas Insurance Code are for a *Stowers* violation, and the Texas Insurance Code and the common law *Stowers* doctrine are governed by the same standard of liability. *Ryan Law Firm, LLP v. New York Marine and General Ins. Co.*, 2020 WL 5820531 at *5-6 (W.D. Tex. Sept. 30, 2020); *OneBeacon Ins. Co. v. T. Wade Welch & Associates*, 841 F.3d 669, 682 (5th Cir. 2016). Thus, in order to succeed on claims under Chapter 541, an insured must prove all elements of a *Stowers* claim. *Ryan*, 2020 WL 5820531 at *5-6. Of note, in *Ryan*, the insured alleged that that the insurer violated the exact same Insurance Code sections and sub-sections that Oxy alleges here. *Id.* at *4. The Western District did not deem it necessary to analyze the specific sections of Chapter 541. *Id.* at *5-6. Instead, it concluded that because the *Stowers* claim failed, the Chapter 541 claims also failed as a matter of law. *Id.* As set forth in detail above, there is no plausible *Stowers* claim under Texas law in this case. Accordingly, for those same reasons, there are no plausible claims under Chapter 541 of the

Texas Insurance Code.

31.     **Oxy lacks standing to assert Chapter 541 claims**. Section 541.060(a) provides that Chapter 541 only applies "with respect to *a claim by an insured or beneficiary*," thus, it only applies to first-party claims, not third-party claims. The only exception recognized by Texas law is for violation of the *Stowers* duty. *See*, *Ryan*, 2020 WL 5820531 at *5-6. This is because a *Stowers* claim is owned by the insured. *See*, *United Wisconsin Ins. Co. v. Wang*, 2025 WL 895837 (S.D. Tex. Mar. 22, 2025)(the cause of action for negligent mishandling of an insurance claim – a *Stowers* claim – belongs solely to the insured; it does not extend to third parties); *Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776 (Tex.App.—Texarkana 1994, no writ)(a third party has no standing to assert a *Stowers* claim). Accordingly, for those same reasons, there are no plausible claims under Chapter 541 of the Texas Insurance Code.

### E.  Breach of Contract Claim

32.     In liability insurance policies generally, an insurer assumes both the duty to defend and the duty to indemnify, which are separate and distinct duties. *D.R. Horton-Texas, Ltd. v. Markel International Ins. Co., Ltd.*, 300 S.W.3d 740,743 (Tex. 2009). In the Amended Complaint, Oxy does not allege a breach of the duty to defend. ECF No. 55 at p. 14-15. In fact, Oxy admits that BNIC defended the *Milburn* Lawsuit ECF No.55 at p.8. Instead, the alleged basis for Oxy's breach of contract claim is that BNIC "rejected" the *Milburn* Demand and "otherwise failed to allocate, fairly and equitably, available coverage between the two competing claims, instead contributing only $1 million to the settlement" and "thus denied the coverage owed to Oxy". *Id.*

33.     The duty to indemnify the insured in a liability policy is the duty to pay covered claims and judgments against an insured subject to the terms of the policy. *In re Farmers Texas County Mutual Ins. Co.*, 621 S.W.3d 261, 270 (Tex. 2021). This contractual duty includes the duty

to pay to the extent of its policy limits. *Id.* at 275. The Amended Complaint alleges that the policy limits (for the two cases) totaled $22 million, that BNIC informed Oxy that it accepted the *Perez* Demand for $21 million, and that BNIC contributed $1 million to the settlement of the *Milburn* Lawsuit. Thus, BNIC fully exhausted its policy limits. As set forth above, in *Soriano*, the Texas Supreme Court held that "when faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." *Soriano*, 881 S.W.2d at 315. Further, as detailed above, BNIC did not "reject" the *Milburn* Demand, as acknowledged by Oxy's factual allegation that Oxy accepted the *Milburn* Demand. Also, as explained above, interpleader was not an option.

34.     The factual allegations in the Amended Complaint also show that BNIC fully complied with Texas law under *Soriano*, and contributed its remaining $1 million in limits to the *Milburn* Settlement. Thus, there is no factual allegation supporting a breach of the duty to indemnify. Further, the Amended Complaint does not identify any specific policy provision that was breached; thus, the breach of contract allegation is otherwise conclusory. Accordingly, there is no plausible breach of contract claim.

### III.
### CONCLUSION

35.     The factual allegations in the Amended Complaint, when taken as true, fail to establish a plausible claim for breach of the *Stowers* duty, breach of contract, or violations of the Texas Insurance Code. Plaintiffs' requested relief would require this Court to create new Texas law in two separate ways: by establishing an exception to the *Soriano* rule that does not currently exist, and by redefining what constitutes damages in a *Stowers* action absent any excess judgment or settlement. Texas law expressly permits an insurer to enter into a reasonable settlement with one

16

claimant even though such settlement diminishes or exhausts the proceeds available to satisfy other claims. Furthermore, interpleader was not a viable option, as it neither caps the insured's potential excess liability nor absolves the insurer from *Stowers* liability. For these reasons, BNIC respectfully requests that the Court dismiss all claims asserted in Plaintiffs' First Amended Complaint with prejudice.

WHEREFORE, PREMISES CONSIDERED, BNIC respectfully requests that this 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint be granted, and for such other and further relief to which BNIC shows itself to be justly entitled.

Respectfully submitted,

**RYMER, ECHOLS, SLAY
& NELSON-ARCHER, P.C.**

Nathan M. Rymer
SBN 00792814 / FID 18902
1502 Augusta Drive, Suite 400
Houston, Texas 77057
Telephone: (713) 626-1550
Facsimile:  (713) 626-1558
nrymer@resnlaw.com
**ATTORNEY FOR BNIC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on all known counsel of record by the Court's e-filing system, in accordance with the Federal Rules of Civil Procedure, on May 12, 2025.

Nathan M. Rymer